**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sabina Francois,<br><br>                   Plaintiff,<br><br>v.<br><br>Jeh Johnson, et al.,[1]<br><br>                   Defendants. | No. CV-13-01964-PHX-PGR<br><br>**ORDER** |

Before the Court is Defendants' motion to dismiss. (Doc. 14.) Plaintiff filed a response opposing the motion, together with a cross-motion for summary judgment. (Doc. 23.) Defendants responded with a motion to hold Plaintiff's cross-motion for summary judgment in abeyance. (Doc. 26.) For the reasons set forth herein, the Court grants Defendants' motion to dismiss. The other motions will be denied.

## BACKGROUND

Plaintiff, a native and citizen of Trinidad and Tobago, states that she lawfully entered the United States as a nonimmigrant visitor on August 12, 1983. (Doc. 1, ¶¶ 11, 12.) Plaintiff married Randolph Barclay, a U.S. citizen, on February 1, 1992. (*Id.*, ¶ 13.)

---

[1] Secretary of Homeland Security Jeh Johnson is substituted for former Acting Secretary Rand Beers. *See* Fed. R. Civ. P. 25(d)

On March 15, 1993, Barclay filed a spousal visa petition (Form I-130) with the Immigration and Nationalization Service ("INS"), seeking to classify Plaintiff as his spouse for immigrant visa purposes. (*Id.*, ¶ 14.) On the same day, Plaintiff filed an adjustment application (Form I-485) with the INS, seeking to adjust her status to that of a lawful permanent resident and obtain a green card. (*Id.*)

Plaintiff was unable to produce her passport and her Form I-94, evidencing that she was lawfully admitted to the United States in 1983. (*Id.*, ¶ 19.) Plaintiff attempted to establish that she lawfully entered the United States by submitting affidavits, but the INS deemed the affidavits insufficient because they did not clearly establish the date of her entry. (*Id.*, ¶ 19, 20.) The INS advised Plaintiff and Barclay to withdraw their pending documents and to re-file new documents that would not require Plaintiff to prove her lawful entry. (*Id.*, ¶ 21.) On July 23, 1993, Plaintiff withdrew her pending adjustment application and Barclay withdrew his pending spousal visa petition. (*Id.*, ¶ 23.)

On July 8, 1994, Barclay filed a second spousal visa petition for Plaintiff. (*Id.*, ¶ 22.) The INS approved that petition on August 18, 1994. (*Id.*, ¶ 24.) On October 1, 1994, 8 U.S.C. § 1255(i) became effective. (*Id.*, ¶ 25.) Pursuant to that statute, Plaintiff filed a new application and paid the $1,000 fee on December 6, 1994. (*Id.*, ¶ 26.) The INS interviewed Plaintiff and Barclay regarding the adjustment application on May 4, 1995. (*Id.*, ¶ 27.)

Following the interview, the INS determined that Plaintiff's marriage to Barclay was not legitimate such that it could confer immigration benefits to Plaintiff. (*Id.*, ¶ 28.) The INS did not notify Plaintiff of its intent to revoke the petition before the actual revocation occurred. (*Id.*, ¶ 30.) It did, however, issue a Notice of Intent to Revoke

("NOIR") to Barclay on September 25, 2000, informing him of the reasons it intended to revoke the approved petition.[2] (Doc. 14, Ex. A at 4.) On March 20, 2001, the INS revoked Barclay's approved spousal visa petition pursuant to 8 U.S.C. § 1154(c). (Doc. 1, ¶ 28.) Plaintiff alleges that Barclay appealed that revocation to the Board of Immigration Appeals ("BIA") on April 3, 2001. (*Id.*, ¶ 32.) On July 16, 2001, the INS denied Plaintiff's second adjustment application because there was no approved spousal visa petition. (*Id.*, ¶ 33.) On January 1, 2002, Barclay and Plaintiff divorced. (*Id.*, ¶ 36.)

Plaintiff then married a second U.S. citizen, James Earl Voice. (*Id.*, ¶ 37.) Voice filed a spousal visa petition for Plaintiff with the United States Citizenship and Immigration Services ("USCIS")[3] on October 19, 2006, and Plaintiff filed a third adjustment application on the same date. (*Id.*) On July 6, 2007, USCIS denied Voice's spousal visa petition under section 1154(c) based on its conclusions that Voice and Plaintiff had failed to establish the legitimacy of their marriage, as well as that of Plaintiff's marriage to Barclay. (*Id.*, ¶ 39; *see* Doc. 14, Ex. B at 3.) USCIS denied Plaintiff's third adjustment application on the same date, again because there was no approved spousal visa petition. (*Id.*, ¶ 40.) Voice appealed the denial of his spousal visa petition to the BIA. (*Id.*; *see also* Doc. 14, Ex. B at 3.) On October 7, 2009, the BIA vacated the denial because USCIS had failed to issue Voice a Notice of Intent to Deny ("NOID") before it denied his petition, and remanded the matter to USCIS for further action. (Doc. 14, Ex. B at 4.)

---

[2] The NOIR cited Plaintiff's statements at the May 1996 interview indicating that she and Barclay had never established a residence together; he resided in Iowa with another woman and her son while Plaintiff resided in Arizona. (Doc. 14, Ex. A at 4.)

[3] On March 1, 2003, the INS ceased to exist as an independent agency. Some of its functions were transferred to USCIS.

- 3 -

On July 6, 2007, U.S. Immigration and Customs Enforcement ("ICE") issued a Notice to Appear ("NTA") against Plaintiff, thereby initiating removal proceedings against her. (Doc. 1, ¶ 41; Doc. 14, Ex. A at 1.) Pursuant to Plaintiff's motion, the immigration judge dismissed those proceedings as premature because Voice's appeal to the BIA was still pending. (Doc. 14, Ex. A at 10.) ICE then issued a new NTA on February 4, 2011, re-initiating removal proceedings. (*Id.*, Ex. C at 1.) ICE amended its NTA to add additional charges against Plaintiff on August 29, 2012. (*Id.* at 1; *see* Doc. 1, ¶ 46.)

Plaintiff moved to terminate her removal proceedings on the basis that she became a lawful permanent resident pursuant to her 1993 adjustment application. (Doc. 14, Ex. C. at 2.) In support of this defense Plaintiff produced a document that had been stored in her alien file and which her counsel had received in response to a FOIA request. (*Id.* at 5.) The document, an undated notice with the rubber-stamped signature of former INS District Director Ruth Anne Myers, states that Plaintiff's 1993 adjustment application was granted. (*Id.*; *see* Doc. 1, ¶ 43.)

ICE and Plaintiff disputed the legal effect of this document during Plaintiff's removal proceedings. (*Id.* at 5–11.) On May 11, 2012, the immigration judge denied Plaintiff's motions to terminate. (*Id.* at 2.) Plaintiff moved the immigration judge to reconsider that order. (*Id.*) On December 6, 2012, the immigration judge rejected Plaintiff's argument that this notice constituted evidence that she was lawfully admitted for permanent residence pursuant to her 1993 application. (*Id.* at 11.) The immigration judge explained that "clear and convincing evidence supports the DHS argument that respondent's 1993 application for adjustment of status was not approved, notwithstanding

the existence of the undated and unissued approval notice in the respondent's file." (*Id.*) The immigration judge therefore concluded that Plaintiff "is not a lawful permanent resident of the United States" and held her removable. (*Id.*)

On July 22, 2009, Plaintiff filed an application to naturalize (Form N-400) with USCIS, seeking U.S. citizenship. (Doc. 1, ¶¶ 55, 81.) USCIS rejected the filing on the same date for "residency issues." (Doc. 14, Ex. D.) Plaintiff filed this action on September 26, 2013.

## DISCUSSION

Plaintiff's complaint raises six causes of action, alleging claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706; the Declaratory Relief Act, 28 U.S.C. § 2201; and the Mandamus Act, 28 U.S.C. § 1361. Specifically, Plaintiff alleges that she is entitled to relief because USCIS unlawfully revoked Barclay's I-130 petition and unlawfully denied Plaintiff's I-485 applications. She seeks an order compelling USCIS to register her status as a lawful permanent resident. Defendants contend that the complaint must be dismissed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of jurisdiction and failure to state a claim.[4] (Doc. 14.)

**A.     Subject Matter Jurisdiction**

---

[4] **Error! Main Document Only.**Defendants have attached to their motion to dismiss the December 6, 2012, decision of the Immigration Judge and a USCIS N-400 printout. (Doc. 14, Ex's. C, D.) These materials, supporting a factual attack on jurisdiction, do not, as Plaintiff contends, convert the motion to dismiss into a motion for summary judgment. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("With a factual Rule 12(b)(1) attack, however, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiffs' allegations.") In support of their argument under Rule 12(b)(6), Defendants refer to the October 7, 2009, decision from the Board of Immigration Appeals. (Doc. 14, Ex. B.) District courts may consider facts extraneous to the complaint on a Rule 12(b)(6) motion without converting it into a motion for summary judgment if the facts are judicially noticeable. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001).

1    Defendants contend that the Court "lacks jurisdiction over every cause of action except [Plaintiff's] claim that USCIS improperly denied her most recent adjustment application." (Doc. 14 at 17.) Specifically, they argue that the REAL ID Act bars the Court from exercising jurisdiction over Plaintiff's mandamus and declaratory judgment claims. (*Id*. at 15; *see* Doc. 25 at 10.) They contend that Plaintiff's claims concerning INS's failure to provide her notice before revoking her former husband's spousal visa petition are either time-barred or there is no final agency action that could confer APA jurisdiction. (*Id*. at 8–10, 12.) Finally, Defendants assert that the Court cannot consider Plaintiff's claim seeking an order compelling USCIS to adjudicate her 2009 application for naturalization because no such application is pending. (*Id.* at 15.) As set forth below, the Court agrees that Plaintiff has not established that this Court has subject matter jurisdiction over her claims.

Under Rule 12(b)(1), a court must dismiss an action if the court lacks jurisdiction over the subject matter of the suit. The party invoking federal jurisdiction bears the burden of establishing that such jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). The Court presumes a lack of jurisdiction until the party asserting federal jurisdiction proves otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *see Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989); *Kashkool v. Chertoff*, 553 F.Supp.2d 1131, 1134 (D.Ariz. 2008).

The Court does not have jurisdiction to hear Plaintiff's challenges to the denials of her I-485 applications. Determinations regarding such applications are made pursuant to 8 U.S.C. § 1255(a),[5] and 8 U.S.C. § 1252(a)(2)(B)(i) expressly states that "no court shall

---

[5] Section 1255(a) of the INA provides that the status of an alien who has been

- 6 -

have jurisdiction to review . . . any judgment regarding the granting of relief under [8 U.S.C. § ] 1255." Therefore, § 1252(a)(2)(B)(i) eliminates district court jurisdiction to review the denial of an I–485 application. *See Ruiz v. Mukasey*, 552 F.3d 269, 276 n.4 (2d Cir. 2009); *Ayanbadejo v. Chertoff*, 517 F.3d 273, 276–77 (5th Cir. 2008) (explaining that under § 1252(a)(2)(B)(i) courts "lack jurisdiction over determinations made with respect to an I–485 application for permanent resident status under § 1255."); *Aguilera v. District Director*, 423 Fed.Appx. 916, 919 (11th Cir. 2011); *see also Hassan v. Chertoff*, 593 F.3d 785, 787 (9th Cir. 2010) (reiterating that "judicial review of the denial of an adjustment of status application—a decision governed by 8 U.S.C. § 1255—is expressly precluded by 8 U.S.C. § 1252(a)(2)(B)(i)"); *Kashkool*, 553 F.Supp.2d at 1137.

Moreover, the judicial review provisions of the APA do not apply where statutes preclude judicial review. 5 U.S.C. § 701(a)(1). As just described, 8 U.S.C. 1252(a)(2)(B)(i) "specifically closes the door to judicial review of certain discretionary agency decisions, including the denial of an application for adjustment of status." *Lee v. U.S. Citizenship and Immigration Services,* 592 F.3d 612, 619 (4th Cir. 2010); *see Mann v. Holder*, No. 12-CV-4712-YGR, 2012 WL 6002730, at *3 n.2 (N.D.Cal. November 30, 2012).

In addition, Plaintiff cannot satisfy the standard for the "extraordinary remedy" of mandamus relief, which "is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is non-discretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no

---

admitted or paroled into the United States "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . " 8 U.S.C. § 1255(a).

other adequate remedy is available." *Kildare v. Saenz,* 325 F.3d 1078, 1084 (9th Cir. 2003) (quoting *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1998). First, the USCIS does not have a clear duty to rule favorably on her I–485 applications. *Aguilera*, 423 Fed.Appx. at 919. In addition, Plaintiff still has remedies available, as she is in removal proceedings where she can pursue this and any other application for relief. *See Ibarra v. Swacina*, 628 F.3d 1269 (11th Cir. 2010) (an adjustment of status decision is a final agency action only when "there are no deportation proceedings pending in which the decision might be reopened or challenged."); *see also Cacaccang v. USCIS*, 627 F.3d 1313, 1315 (9th Cir. 2010) (explaining that "district courts lack jurisdiction to review denials of status adjustment if removal proceedings are simultaneously pending.").

For similar reasons, Plaintiff is not entitled to relief under the APA. The USCIS did not unlawfully withhold action on Plaintiff's I-485 applications, *see* 5 U.S.C. § 706(1), and its denial of the applications is not a final agency action, 5 USC § 704. Therefore, the Court lacks jurisdiction to consider these claims under the APA.[6] *See Cacaccang*, 627 F.3d at 1315; *Gupta v. U.S. Atty. Gen.*, 439 Fed.Appx. 858, 860–61 (11th Cir. 2011).

Finally, the Declaratory Judgment Act does not provide an independent basis for subject matter jurisdiction. *Schilling v. Rogers,* 363 U.S. 666, 678 (1960); *see Aguilera*, 423 Fed.Appx. at 919; *Beshir v. Holder*, --- F.Supp.2d ----, 2014 WL 284886, at *4 (D.D.C. 2014). To consider a claim under the Declaratory Judgment Act, a federal court

---

[6] If the immigration judge ultimately orders Plaintiff removed, she may seek recourse in federal court only after she brings her claims for relief to the BIA and the BIA rules on her appeal. *See* 8 U.S.C. § 1252(d). As Defendants note, at that point Plaintiff may seek relief in the Ninth Circuit through a petition for review. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9), (g).

must have jurisdiction under another federal statute. *Schilling,* 63 U.S. at 678. As explained above, other federal statutes do not provide jurisdiction.

Jurisdiction also fails because, as Defendants point out, Plaintiff's claim challenging the denial of her second I-485 application is time-barred. There is a six-year statute of limitations for claims against the United States government. 28 U.S.C. § 2401(a). The INS denied Plaintiff's application on July 16, 2001 (Doc. 1, ¶ 33.) Plaintiff filed her complaint on September 26, 2013, more than 12 years later. Therefore, the six-year statute of limitations precludes jurisdiction over the claim. 28 U.S.C. § 2401(a); *Offiiong v. Holder*, 864 F.Supp.2d 611, 629 (S.D.Tex. 2012).

Likewise, Plaintiff's claim based on the INS's failure in 2001 to provide her notice before revoking her former husband Barclay's spousal visa petition is time-barred. Alternatively, if, as Plaintiff contends (Doc. 1, ¶ 32), Barclay has appealed that decision, the appeals remains pending and there is no final agency action that could confer APA jurisdiction. *See Bennett v. Spear,* 520 U.S. 154, 177–78 (1997) (holding that an action is final where it marks the "consummation of the agency's decision-making process"); *see also Bangura v. Hansen*, 434 F.3d 487, 501 (6th Cir. 2006) (finding that the decision to deny spousal immigration petition of alien's husband was not final agency action under the APA where husband filed administrative appeal from that decision).

Finally, the Court lacks jurisdiction over Plaintiff's mandamus claim asking the Court to order USCIS to adjudicate her I-400 application for naturalization filed in July 2009. (Doc. 1, ¶¶ 73–75, 81.) USCIS rejected the application for "residency issues" (Doc. 14, Ex. D), so there is no pending application for USCIS to adjudicate. USCIS has no duty to adjudicate an application that is not before the agency, and in the absence of a

duty there can be no claim for mandamus relief. *Patel*, 134 F.3d at 931.

In sum, Plaintiff has failed to show that the Court has jurisdiction to hear her challenges to the denials of her I-485 adjustment applications.

**B.      Failure to State a Claim**

Underlying Plaintiff's APA claims is her contention that USCIS "unlawfully denied [her] second and third I-485 applications based on their unlawful revocation of Randolph Barclay's approved I-130 application." (Doc. 1, ¶ 63.) Specifically, Plaintiff contends that she was entitled to a NOIR before her former husband's I-130 petition was revoked. In addition to the jurisdictional issues just discussed, the Court concludes this challenge to the revocation of Barclay's I-130 petition fails to state a claim on which relief can be granted.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged" under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Under the APA, a court may set aside an agency action or decision if the court finds it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). USCIS's denial of Plaintiff's adjustment application does not satisfy this standard.

Plaintiff relies on *Ilyabaev v. Kane,* 847 F.Supp.2d 1168, 1173 (D.Ariz. 2012), to support her argument that she was entitled to notice before Barclay's I-130 petition was revoked. The decision in *Ilyabaev* is distinguishable on both legal and factual grounds.

In *Ilyabaev*, the district court determined that it had subject matter jurisdiction over a due process claim based on USCIS's failure to provide notice to the beneficiary, Ilyabaev, prior to the revocation of the applicant-employer's I-140 "skilled worker" visa and the denial of Ilyabaev's I-485 application. The court rejected USCIS's argument that only the applicant-employer was entitled to notice under 8 C.F.R. § 103.2(b)(16)(i).[7] In the court's view, Ilyabaev was also an "applicant" for purposes of the regulation and the lack of notice deprived him of an opportunity to rebut USCIS's derogatory information that he lacked sufficient employment experience. *Id.* at 1177–78.

The Court has not located a case holding that a beneficiary is entitled to separate notice before the revocation of her spouse's I-130 application. To the contrary, the regulations and the cases indicate that it is only the petitioner-applicant who must be notified of derogatory information. *See* 8 C.F.R. § 205.2, *Matter of Calilao*, 16 I. & N. Dec. 104, 106 (BIA 1977); *Matter of Obaigbena*, 19 I. & N. Dec. 533, 536 (BIA 1988); *Foul v. Mukasey*, 256 Fed.Appx. 785, 789 (6th Cir. 2007); *see also Matter of Ho,* 19 I. & N. Dec. 582, 589 (BIA 1988) ("[T]he approval of a spousal visa petition vests no rights in the beneficiary of the petition."). Moreover, only the petitioner has standing to appeal a

---

[7] Section 103.2(b)(16)(i) provides that, "If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered . . ."

- 11 -

visa petition denial to the BIA. *See* 8 C.F.R. § 1003.3(a)(2); *Matter of Sano,* 19 I. & N. Dec. 299, 300 (BIA 1985).

In addition, in contrast to *Ilyabaev*, where Ilyabaev would have been able to rebut the derogatory information about his employment history if he had received notice, Plaintiff does not point to any derogatory information considered by USCIS of which she was unaware. *See Nwauwa v. Holder*, No. 120-C-2925, 2013 WL 842665, at *5 (N.D.Ill. March 6, 2013) (finding no due process violation because, "unlike in *Ilyabaev* [], plaintiff fails to allege that the decision was based on any information of which she was not aware."). Moreover, as Defendants note, notwithstanding the INS's failure to provide a NOIR before revoking Barclay's I-130 petition on the grounds that the marriage was fraudulent, Plaintiff was given an opportunity to rebut those findings during her current husband's proceedings, where the alleged fraudulence of her first marriage was also an issue. *See Matter of Tawfik,* 20 I. & N. Dec. at 168, 1990 WL 385753 (explaining that where prior fraud is the basis for denying a subsequent I-130 petition, "the district director should not give conclusive effect to determinations made in a prior proceeding, but, rather, should reach his own independent conclusion based on the evidence before him.").

Based on these circumstances, and pursuant to Rule 12(b)(6), Plaintiff does not state a claim under the APA based on USCIS's failure to provide her notice before revoking Barclay's I-130 petition.

## CONCLUSION

The Court does not have jurisdiction over Plaintiff's claims for mandamus or declaratory relief or relief under the APA. Plaintiff has failed to state a claim for which

relief can be granted under the APA. Therefore, Defendants' motion to dismiss is granted. Having granted the motion to dismiss, the Court will deny Plaintiff's cross-motion for summary judgment.

Accordingly,

IT IS HEREBY ORDERED granting Defendants' motion to dismiss (Doc. 14).

IT IS FURTHER ORDERED denying Plaintiff's cross-motion for summary judgment (Doc. 23) and denying as moot Defendants' motion to hold Plaintiff's cross-motion in abeyance (Doc. 26).

IT IS FURTHER ORDERED that the Clerk shall enter judgment dismissing this action. The Clerk is directed to close this case.

Dated this 21st day of April, 2014.

_____
Paul G. Rosenblatt
United States District Judge